IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Akil Rashidi Bey a/k/a Aikido Graves,          )
    Plaintiff,                              )
                                            )
v.                                             )          1:13cv176 (LO/IDD)
                                            )
Commonwealth of Virginia, et al.,              )
    Defendants.                             )

FILED
MAR 2 0 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Akil Rashidi Bey a/k/a Aikido Graves, currently a Virginia inmate proceeding pro se, has

filed a civil action pursuant to various federal laws, asserting claims against a number of

defendants arising from the investigation of child abuse charges made by his daughter and his

subsequent prosecution for aggravated sexual battery. By Order dated February 14, 2013,

plaintiff was granted leave to proceed in forma pauperis in the action. The case is presently

before the Court on motions to dismiss filed by all defendants. For the reasons which follow, the

motions to dismiss will be granted, and the case will be dismissed, without prejudice. Also

pending are a number of motions by plaintiff for various forms of relief, which will be denied.

### I. Background

This lawsuit is the second federal action filed by plaintiff in which he alleges in part that

his constitutional rights were violated in the course of the investigation and prosecution of child

abuse allegations made by his daughter. Plaintiff also alleges that other officials violated his

civil rights in the course of investigating and prosecuting his subsequent criminal activity.

Because plaintiff's allegations in the instant complaint are difficult to follow, the Court looks

first for a summation of the underlying facts to the final Order entered in plaintiff's earlier case,

Graves v. Depolo, 1:10cv1129 (E.D. Va. Mar. 9, 2011) (TSE); see Dkt. 29, Ex. 1.[1]  Briefly, that

Order reflects that the Prince William County Department of Social Services ("DSS") received

information in November, 2009, that plaintiff had sexually molested one of his daughters. Id. at

2.  As a result, plaintiff and his family were questioned by Shandra Cobb, a DSS social worker,

and Jamie Sansale, a detective for the Prince William County ("PWC") police department.  Id.

On December 10, 2009, based upon the sworn affidavit of Detective Sansale, an arrest warrant

was issued for plaintiff on the ground that there was probable cause to believe that he had

committed aggravated sexual battery.  Id at 3.  In late 2009, DSS filed a petition in the Juvenile

and Domestic Relations Court of PWC which resulted in a finding by Judge George Depolo that

each of plaintiff's three children was an abused or neglected child or was at risk of becoming

such, and their custody was transferred to DSS in March, 2010.  Id  Plaintiff appealed the final

custody order to the circuit court, where it was upheld by Judge Mary Grace O'Brien.  Id at 5-6.

After a hearing on December 8, 2010, Judge O'Brien entered dispositional orders transferring the

custody of each child to DSS.  Id  at 6.

While the custody proceedings were ongoing, plaintiff filed the complaint in case number

1:10cv1129.  In that action, the named defendants were Judges Depolo and O'Brien, social

worker Cobb, and Detective Sansale.  Plaintiff alleged that each defendant violated plaintiff's

rights during the course of investigating, prosecuting and adjudicating the child abuse allegations,

--------

[1]A court appropriately may consider public documents when deciding a motion to
dismiss. See Sec'y for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).
In addition, a court may take judicial notice of its own records and files, whether or not it is
requested to do so. Fed. R. Evid. 201. Judicial notice is particularly applicable to a court's own
records of prior litigation which is closely related to the matter under consideration. Lolavar v.
De Santibanes, 430 F.3d 221, 224 n.2 (4th Cir. 2005).

2

and he requested a variety of relief including money damages, custody of the children, letters of

apology from all entities involved in the criminal prosecution and custody proceedings, and

removal of his and his wife's names from the "central registry."  Id at 7.  As the action

progressed, plaintiff added a number of claims, including assertions that his Fifth Amendment

rights were violated by Cobb and Sansale because he did not receive Miranda warnings prior to

being questioned; his Sixth Amendment right to confrontation was violated because he was not

allowed to cross-examine the prosecutor's report; the arrest warrant obtained by Sansale was

based on false information; and the defendants were involved in an unlawful conspiracy against

him.  Id at 8.  The defendants all filed motions to dismiss, and after oral argument on January 7,

2011, the motion to dismiss filed jointly by Judges Depolo and O'Brien was granted on the

ground of judicial immunity.  See Graves v. Depolo, 1:10cv1129 (E.D. Va. Jan. 14, 2011)

(Order).  By Order dated March 9, 2011, the motion to dismiss of Sansale and Cobb was granted

in part, insofar as the following claims were dismissed: all claims for declaratory and injunctive

relief; claims for monetary damages based on alleged violations of the Fourteenth Amendment by

threats to take the children away and failure to provide notice of central registry determinations; a

claim for monetary damages based on an alleged violation of the Fifth Amendment by omission

of Miranda warnings;  and monetary damages for defendants' alleged participation in a criminal

conspiracy. Plaintiff's claims that Cobb violated his Fourteenth Amendment rights by submitting

false evidence to the juvenile court as well as his claim that Sansale Cobb violated his Fourteenth

Amendment rights by making false statements in the affidavit used to secure the arrest warrant

3

were stayed pending resolution of the plaintiff's pertinent state court proceedings.[2]  Graves v. Depolo, 1:10cv1129 (E.D. Va. Mar. 9, 2011) (Order at 18).

## II. The Instant Complaint

The alleged events that give rise to this lawsuit principally concern plaintiff's court appearances in the PWC Circuit Court and a brief ensuing period of confinement at the Prince William County Adult Detention Center ("PWCADC").[3]  Plaintiff sets out six claims, which he refers to as "Complaints." The "Complaints" are far from clear but appear to be summarized briefly as follow.

Introduction:  Plaintiff opens his complaint with a section he titles "Federal Question," in which he cites various federal laws which apparently are intended to establish this Court's jurisdiction. These include federal statutes such as 42 U.S.C. § 14141, criminal statutes found in Tile 18 of the United States Code, and various constitutional provisions such as "Excessive Bail 8th Amendment." In addition, when this case was filed on February 7, 2013, plaintiff already had pending a complaint that was docketed as case number 1:13cv102 in which he alleged the same claims that are numbered claims one and two in this action - namely, 1) officers of the PWCADC interfered with his legal mail, and 2) prison officials refused to provide him with an allegedly religiously-mandated vegetarian diet. The complaint in this case had been served on all defendants and the motions to dismiss now under consideration had been filed when it was

---

[2]While the earlier federal action was pending, plaintiff was indicted a second time for aggravated sexual battery. Graves v. Depolo, 1:10cv1129 (E.D. Va. Mar. 9, 2011); Dkt. 29, Ex. 1 at 9.

[3]In a recent pleading, a "Notice of Updates" filed on January 9, 2014, plaintiff states that he again "is ... being held" at the PWCADC. Dkt. 65 at 1.

realized that the two cases were duplicative, so in the interest of judicial economy case number 1:13cv102 was dismissed so that the claims could proceed in this action. However, in case number 1:13-102 plaintiff also relied on 42 U.S.C. §1983 as a jurisdictional basis for his claims. Therefore, in light of the liberality with which <u>pro</u> se pleadings must be interpreted, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), it is assumed that plaintiff's constitutional claims in this lawsuit also are predicated on § 1983, and the claims will be analyzed accordingly. <u>See Graves v. Depolo</u>, 1:10cv1129 (E.D. Va. Mar. 9, 2011) (Order at 13) ("Although plaintiff does not specifically refer to 42 U.S.C. § 1983 in any of his pleadings, a *pro se* plaintiff's claims should be construed liberally, and hence his constitutional claims are regarded as § 1983 claims.")

<u>Claim 1</u>: " <u>Unlawful Search and Seizure and Unlawful Arrest; Attorney Client Privilege Violation; Tampering with Evidence</u>"

In his first claim, plaintiff alleges that he was wrongfully arrested for failure to appear at a proceeding in PWC Circuit Court. According to plaintiff, this occurred because he did "not receiv[e] Due Process of a change in docket time" on January 4, 2013. Compl. at 5.[4] Plaintiff had with him "a crate of 6 legal binders full of legal instruments [and] evidence relating to" several cases. While plaintiff was being processed through intake at the PWCADC, he saw a corrections officer pick up one of his binders, and plaintiff told the officer that the binder contained legal files and he would prefer the officer not to search or to read it. The officer nonetheless read plaintiff's legal documents, and eventually three additional officers "joined in the search." Compl. at 5. Plaintiff spent the next twelve days confined at the PWCADC, and when he was released on bail on he noticed that his crate of binders and papers had been placed

---

[4]This allegation is repeated in greater detail in Claim 3, <u>infra</u>.

in a different bag and some were missing. Compl. at p. 6. After plaintiff got to his home he was able to go through his materials more thoroughly and he discovered that "there was some very vital legal documents and evidence missing." Compl. at p. 7. Plaintiff alleges that corrections officers at PWCADC tampered with evidence and violated his rights under the Fourth, Fifth and Sixth Amendments. Id. The defendants named in connection with this claim are John Doe 1 through 4 and Jane Doe 1, and as relief plaintiff seeks monetary damages and dismissal of the charges pending against him. Compl. at 6.

Claim II: "Religious Rights and Freedoms"

In his second claim, plaintiff alleges that he is a Moorish American Moslem and has been a vegetarian for twelve years. Plaintiff states that he is a vegetarian because as a Moslem he must treat his body as a temple, Compl. at p. 6, and also that he is "allergic to meat." Compl. at p. 7. When plaintiff was first incarcerated at the PWCADC in 2009 he informed officials about his diet, and "though [he] was there only a day or so [his] diet was not honored." Compl. at p. 6. In 2011 plaintiff was again incarcerated at PWCADC for approximately three months, and when he filed several requests for an acceptable diet the medical department said it would require approval from the chaplain. Apparently, plaintiff did not receive approval, since he states that during this period he ate only side dishes such as beans, potatoes and greens, bread, cheese and potato chips. Compl. at p. 6 - 7. Plaintiff states that he filed a grievance regarding the situation but never got a reply. Compl. at p. 7.

In 2012, plaintiff returned to the PWCADC for five days. During the intake process he informed officials that he was a Moorish American Moslem and allergic to meat, and he filed a dietary request with the medical department and the chaplain, but he never received a reply.

6

Plaintiff again found himself confined at the PWCADC in January, 2013, apparently based on

the failure to appear charge plaintiff describes in Claim One, and he again informed the staff that

he is a Moorish American Moslem, a vegetarian, and allergic to meat. Three days after he was

incarcerated, a classification officer e-mailed the chaplain concerning plaintiff's diet, and the

chaplain responded that the PWCADC is a no-pork facility and asked for the basis of plaintiff's

request. Plaintiff responded that eating meat is contrary to his Muslim faith and his health, but

the chaplain apparently refused to honor plaintiff's request. Id. As a result, plaintiff suffered

headaches, weight loss, lightheadedness, fatigue, stress, depression, and "health issues." Plaintiff

asserts that the denial of a meatless diet violated his "religious rights and freedoms," and as relief

he seeks an award of monetary damages and an order directing the PWCADC to honor Moslem

vegetarian diets.

Claim 3: "Constitutional Laws Due Process, 18 U.S.C. §242 - Deprivation of Rights
under Color of Law, Religious Rights and Freedoms, Excessive Bail 8th Amendment, Unlawful
Arrest, Title 18 U.S.C. § 241 Conspiracy Against Rights"

In his third claim, plaintiff states that he went to the Prince William County Circuit Court

clerk's office to file a motion on December 21, 2012. The clerk stamped the motion and circled

January 4, 2013 at 10 AM as the date and time the motion would be heard. Compl. at 6. A week

later, plaintiff filed three additional motions and again was assigned the same date and time for a

hearing. When plaintiff arrived for the scheduled hearing, Judge Farris was presiding. Compl. at

6. Plaintiff set down his "crate of binders" and informed a sheriff that he was there for the

Graves case and he needed to use the restroom. When plaintiff was walking down the hallway to

return to court the sheriff stopped him and stated that "the judge don't want [plaintiff] or that hat

([plaintiff's] religious headdress) back in his courtroom and he don't want to hear anything

7

[plaintiff] have to say." Id.   Another sheriff was called over and plaintiff was arrested, because "Judge Farris issued three capias on three of the motions that the times was [sic] changed to 9 AM." Id.  Plaintiff allegedly had never been notified of this time change for the hearing and the charges subsequently were dismissed by Judge Johnston on January 10, 2013. Id. Nonetheless, "due to communications and clerical error," plaintiff was held until January 15 and was required to repay a bond on the charges, which allegedly was the fourth bond he had had to pay on the same charges.  Plaintiff alleges that this "excessive bail" violated his rights under the Eighth Amendment, and that Virginia authorities subjected him to "mistakes, retaliation, and false colorful allegations." Id.  The defendant sued in connection with this claim is Judge Farris.

Claim 4: "923 18 U.S.C. § 371 - Conspiracy to Defraud the United States, 18 U.S.C. § 1512 - Tampering with a witness, 18 U.S.C. § 201: Bribery of public officials and witness, 18 U.S.C. Chapter 11 -BRIBERY, GRAFT, AND CONFLICTS OF INTEREST, 18 U.S.C. § 242 - Deprivation of rights under color of law, Civil Conspiracy, Title 18, U.S.C. Section 241 Conspiracy Against Rights"

In his fourth claim, plaintiff alleges that in March or April of 2012 he was answering the "routine questions" of a "pretrial lady." Despite plaintiff's assertion that he doesn't smoke, do drugs, or drink alcohol, the officer "consistently asked [him] over and over again" if he had a drug or alcohol problem, and when he said no she replied, "Yaaa right are you sure?" Compl. at 7.  At a bond hearing in June, 2012 the judge set bail with no mention of pretrial, but the same "pretrial lady" was present in court and she told plaintiff that the judge wanted plaintiff on pretrial. Id.  As a result plaintiff had to take a drug test and an alcohol test, was prohibited from having guns or knives, and was required to "report in." Id.  Months later, plaintiff was "violated" because the "pretrial lady" had lied and said he drank alcohol.  Plaintiff attributes his situation to a "constant conflict of interest" that results from "corruption and civil conspiracy, and there is no

8

public defenders office to serve the people." Compl. at 7-8.

Plaintiff also alleges in Claim 4 that he has experienced "constant conflict of interest ... in all matters JDR, General District, and Criminal." Compl. at 7. As evidence, plaintiff points to the alleged fact that two attorneys have "recused" themselves from his cases because of conflicts of interest. Id.

Claim 5: "Constitution Religious Rights and Freedoms, Title 18, U.S.C. Section 241 Conspiracy Against Rights"

Plaintiff alleges in his fifth claim that when he walked into the courtroom at Prince William County General District Court on December 12, 2012, a sheriff told him to take off his "national religious headdress." Compl. at 8. Plaintiff went outside the courtroom and some other sheriffs with whom plaintiff was familiar came over to him. Although these sheriffs allegedly had seen plaintiff wear a fez or a kufi to court "plenty of times," this time they told him his headdress was considered a hat so he could not wear it. Plaintiff responded that he could not remove the headdress because it is his "birthright religious and national headdress." Id. Eventually a sheriff told plaintiff to write a note which was provided to the judge, and plaintiff was instructed to wait outside the courtroom until he was called. Id. at 8-9. This made plaintiff feeling "totally insulted, holding in [his] tears." Id. at 9. When plaintiff eventually was called into the courtroom the judge referred to him as "Mr. Graves" rather than by his "free national name title and attribute," and plaintiff entered a plea "under protest, duress, threat, and coercion with all rights reserved." Id. at 9. The complainant testified, and then plaintiff informed the Court that the summons and complaint wrongfully referred to him as "black," when in fact he is not a negro, black, colored, or African American, but he is in fact a Moor and "calling a Moor

black is disrespectful; it goes against his nationality and his faith." Id. At this point plaintiff could tell that the judge "grew more and more frustrated with [him] very fast." Id. The judge instructed plaintiff to raise his hand to be sworn, and plaintiff explained that it is "against [his] faith and [him] as an honest man to swear above or below [his] head" and that as a Moslem he "affirm[s] the truth." Id. at 10. The Court allegedly cut plaintiff off and said, "Guilty!" Id. The sheriffs "bum rush[ed]" plaintiff, telling him to say nothing else but to go to the clerk and pay. Plaintiff had "no choice" but to appeal. Id. It appears that the defendant named in connection with this claim is Judge Tracy Calvin Hudson.[5]

Claim 6: "18 U.S.C. § 912 ... § 61-5-271 "Fraudulent Official Proceedings; Unlawful Arrest and Imprisonment"

In his sixth claim, plaintiff alleges that he was unlawfully arrested and imprisoned when Ms. Graham, a caseworker, falsely stated in a report that plaintiff threatened her first at a meeting and then over the telephone. Plaintiff asserts that she was motivated to do this by bias and a wish to do him harm and "hinder the return of [his] Moorish children." Compl. at 12. Plaintiff also includes allegations that Ms. Graham "lied" about being an officer of the court in order to "try to find [him] competent." Id. at 11 - 12. Plaintiff declares that the Commonwealth has tried to "involve" him with being a terrorist, a rapist and an angry man and judges have "requested to have [him] locked up for making contact via social media and phone," when in reality he is and always has been a "Moslem and stand[s] for Love, Truth, Peace Freedom and Justice." Compl. at 12.

---

[5]Plaintiff names no judge within his recitation of Claim Five in the body of the complaint. Judge Hudson's name appears in the complaint's caption, and Judge Farris is explicitly named in connection with Claim Three. Therefore, it is assumed that Judge Hudson was presiding when the events alleged in Claim Five took place.

"Writ of Mandamus"

After setting out the foregoing six "complaints," plaintiff includes a section in the complaint captioned "Writ of Mandamus." There he asserts that relief for the two claims that were stayed in 1:10cv1129 should now be granted because the Commonwealth has delayed resolution of plaintiff's criminal and other proceedings "via civil conspiracy and abuse of color" such that it is now "way pass [sic] the statute of limitations," and plaintiff "wish[es] to proceed with the action." Compl. at 12-13. Plaintiff challenges the veracity of affidavits submitted by Shandra Cobb and Detective Sansale in his criminal prosecution, and contends that because PWC and the Commonwealth have "conspired" to keep plaintiff from appealing and because he was "abandoned" by two appointed attorneys, this Court should issue a writ of mandamus "rendering" the juvenile and criminal cases. Compl. at 12-13. Plaintiff also reiterates the contention he made in the earlier federal action that Detective Sansale acted unlawfully by speaking to plaintiff's daughter at school "without any permission or warrant." Compl. at 13.

The named defendants are the Commonwealth of Virginia, the PWCADC, Judge Tracy Calvin Hudson, Judge Lon Edward Farris, PWC Pretrial Services Jane Doe ("Pretrial Lady"), the Prince William County Sheriff's Department, PWC John Doe Officers 1-3 and Jane Doe 1, Shandra Cobb, Jamie Sansale, and Carolyn Graham. As relief, plaintiff seeks an award of $80 million in damages, injunctive relief in the form of orders directing the return of "all children back to [plaintiff] and his wife right away" and requiring the Commonwealth to apologize to him, and the dismissal of all criminal charges pending against him. Compl. at 13-14.

## II. Standards of Review

### A. Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss those allegations that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails. Id. at 679. In analyzing a complaint filed by a plaintiff who is proceeding pro se, however, a court is obliged to afford the allegations generous construction. Haines, 404 U.S. at 520; Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### B. Rule 12(b)(1)

Federal district courts are courts only of the limited jurisdiction which is granted to them by the United States Constitution and statutes. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). When a district court lacks subject matter jurisdiction over an action, the action is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1). Arbaugh v. Y&H Corp., 546 U.S. 500, 506-07 (2006). In determining whether jurisdiction exists, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment ...." Richmond, Fredericksburg & Potomac Railroad Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). A Rule 12(b)(1) motion to dismiss should be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." AtlantiGas Corp. v. Columba Gas Transmission Corp., 210 Fed. App'x 244, 247 (4th Cir. 2006).

12

### III. Analysis

The defendants have filed a total of four (4) joint motions to dismiss the claims plaintiff makes against them. In each instance, plaintiff was provided with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K). For the reasons which follow, all four Motions to Dismiss will be granted, the claims against the defendants will be dismissed without prejudice, and the action will be dismissed without prejudice.

A. Motion to Dismiss of Shandra Cobb, PWC Pretrial Services, Jane Doe 1 and Jamie Sansale (Dkt. 27)

Defendants Shandra Cobb, PWC Pretrial Services, Jane Doe 1 and Detective Jamie Sansale are plainly entitled to dismissal of the claims plaintiff asserts against them in the "Mandamus" section of the complaint.

(1) Plaintiff is collaterally estopped from reasserting his claims against defendants Shandra Cobb and Detective Jamie Sansale in this proceeding. As discussed above, the claims plaintiff makes here against Cobb and Sansale are a reiteration of the claims he made in his earlier federal case - that is, that Cobb and Sansale violated his constitutional rights during the course of investigating and prosecuting the child abuse allegations made against plaintiff by his daughter.

It is well established that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147 (1979). In other words, collateral estoppel bars relitigation of an issue that has already been judicially decided. Sedlack v. Braswell Services Group, 134 F.3d 219, 224 (4th Cir. 1998).

"Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co., Inc., v. Shore, 439 U.S. 322, 326 (1979). For collateral estoppel to apply, the following criteria must be met: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue actually must have been determined in the prior proceeding; (3) determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom preclusion is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.  Eddy v. Waffle House, Inc., 482 F.3d 674, 679 (4th Cir. 2007).  Those factors are present here, so plaintiff may not relitigate the claims against Sansale and Cobb that were dismissed in 1:10cv1129.  Moreover, as shown by plaintiff's allegations in the complaint, he has successfully delayed trial in the state criminal action, so the stay imposed in 1:10cv1129 as to two claims remains in effect.  Therefore, to the extent that plaintiff argues that he "wishes to proceed" with the claims against Sansale and Cobb that were stayed in case number 1:10cv1129, he must seek such relief by filing appropriate pleadings in that lawsuit; he may not do what he attempts to do here - that is, to reassert identical claims in an entirely different action.  Thus, plaintiff's claims against Cobb and Sansale will be dismissed, without prejudice to his ability to seek relief in pending action 1:10cv1129.[6]

---

[6]For the same reasons, the Court will refrain from addressing defendants' arguments that they are entitled to qualified immunity for their actions in investigating the child abuse allegations against plaintiff and submitting an affidavit to support criminal charges, that sovereign immunity bars plaintiff's claims, and that plaintiff's contributory negligence bars his claims. Dkt. 27 at 8-11.  Defendants may readdress those issues if necessary in case number 1:10cv1129.

2) Plaintiff's claim against "PWC Pretrial Services" must be dismissed because there is no such entity subject to suit. In the memorandum supporting their Motion to Dismiss, defendants point out that there is no entity specifically titled "PWC Pretrial Services," but they appropriately suggest in deference to plaintiff's pro se status that he may have intended to sue the PWC Office of Criminal Justice Services. Dkt. 29 at 7. If so, however, plaintiff states no claim for which relief can be granted, because that office as an operating division of a governmental entity cannot be sued because neither the Virginia General Assembly nor the Prince William County Board of County Supervisors has vested such capacity in it. See Gedrich v. Fairfax Cty. Dep't of Family Serv., 282 F.Supp. 2d 439, 456 (E.D. Va. 2003)(dismissing Fairfax County Department of Family Services as a defendant due to its lack of capacity to be sued). Therefore, the Motion to Dismiss plaintiff's claim against "PWC Pretrial Services" must be granted for failure to state a claim.

3) Plaintiff's allegations against the individual he identifies alternately as "Pretrial Lady" and "Jane Doe 1" are too vague to state a claim for relief. The sole discernable contention of harm allegedly caused by this individual is that she lied about plaintiff's drinking habits and caused him to be placed on supervision, but that statement is unsupported by any facts that might raise it above the level of mere speculation. As such, plaintiff's allegations against Jane Doe 1 / "Pretrial Lady" do not "raise a right to relief above the speculative level," and must be dismissed without prejudice pursuant to Rule 12(b)(6). Cf. Twombly, 550 U.S. at 555.

b. Motion to Dismiss of the Commonwealth and Judges Hudson and Farris (Dkt. 17)

The Commonwealth, Judge Tracy Calvin Hudson and Judge Lon Edward Farris have jointly moved to dismiss claims against them for lack of jurisdiction and for failure to state a

claim. For the following reasons, the motion will be granted.

      1)  Among the arguments put forward by Judges Hudson and Farris is the dispositive contention that they are absolutely immune from liability for their actions with respect to plaintiff.  It is well settled that judges are absolutely immune for suits arising out of their judicial acts.  Pierson v. Ray, 386 U.S. 547 (1967); Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987).  This immunity extends to claims for injunctive relief as well as those for money damages.  Roth v. King, 449 F.3d 1262, 1286 (D.C. Cir. 2006).  The immunity is overcome only when a judge acts outside of his or her judicial capacity or in the complete absence of jurisdiction.  See Mireles v. Waco, 502 U.S. 9, 11-12 (1991).  As to the first exception, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."  Stump v. Sparkman, 435 U.S. 349, 362 (1978).  As to the second inquiry, a judge acts in the absence of jurisdiction "if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which he presides."  King v. Love, 766 F.2d 962, 965 (6th Cir. 1985).

    Here, plaintiff alleges that  when he appeared in PWC General District Court during the course of proceedings on December 12, 2012, Judge Hudson told him to remove his "religious national headdress," referred to him as "Mr. Graves" rather than by his "free national name," and called him "black" when instead he is a Moor.  Compl., Claim 5.  Judge Farris allegedly had plaintiff arrested on January 4, 2013, when plaintiff arrived late to court and set "excessive bail" in violation of plaintiff's Eighth Amendment rights.  Compl., Claim 3.  Taking these allegations as true for the purpose of the pending motion, the alleged actions were taken by defendants

16

within their judicial capacities and were not without jurisdiction.[7] Therefore, they cannot form the basis for either monetary or injunctive relief by the plaintiff, and the claims against Judges Hudson and Farris must be dismissed.

2) Plaintiff's claim against the Commonwealth of Virginia also must be dismissed, because the Eleventh Amendment bars a citizen from bringing suit against his or her own state in federal court. See Hans v. Louisiana, 134 U.S. 1 (1890). More specifically, "the Commonwealth of Virginia, never having waived her Eleventh Amendment immunity, is not amenable to a suit for damages in federal court, even when the basis for such suit is a claimed violation of 42 U.S.C. § 1983." Croatan Books, Inc. v. Virginia, 574 F.Supp. 880, 883 (E.D. Va. 1983). Moreover, a state is not a "person" and so is not amenable to suit under § 1983 for injunctive or declaratory relief. Id. at 886; see generally, West v. Atkins, 487 U.S. 42 (1988) (to state a cause of action under § 1983, a plaintiff must allege facts indicating that he or she was deprived of rights guaranteed by the Constitution or laws of the United States and that the deprivation resulted from conduct committed by a person acting under color of state law). Therefore, plaintiff's claim against the Commonwealth of Virginia must be dismissed with prejudice.

---

[7]Defendants clarify that Judge Farris is a circuit court judge and Judge Hudson is a general district court judge. Dkt. 18 at 14, n. 3. Although the nature of the proceedings in which the defendants took their allegedly unlawful actions are unclear, it still is apparent that they were not taken in the absence of jurisdiction. Circuit courts in Virginia have jurisdiction over both criminal prosecutions and child custody matters, see Va. Code § 17.1-517, so Judge Farris had jurisdiction regardless of whether the events plaintiff describes occurred in the child custody proceedings or plaintiff's criminal prosecution. Since Judge Hudson is accused of setting excessive bail it appears that he acted during a criminal prosecution, and general district court judges have jurisdiction over criminal matters in Virginia. See Va. Code § 16-1123.1.

c. Motion to Dismiss of Carolyn Graham (Docket # 23)

Plaintiff's claim against defendant Carolyn Graham must be dismissed without prejudice for failure to state a claim upon which relief can be granted. Without additional supporting facts, plaintiff alleges that Ms. Graham, a caseworker, made false allegations that he threatened her and was motivated to do so by bias and a wish to do him harm by hindering the return of his children. Compl. at 12. Plaintiff also asserts that Ms. Graham "lied" about being an officer of the court to "try to find [him] competent." Id. at 11 - 12. These allegations are no more than "'naked assertion[s] devoid of 'further factual enhancement'" and hence fall short of stating a claim. Iqbal, 129 S. Ct. at 1949. Moreover, plaintiff's sweeping, melodramatic allegations against Ms. Graham do not meet the plausibility standard established in Iqbal and Twombly. Accordingly, the claim against defendant Graham must be dismissed without prejudice for failure to state a claim.

d. Motion to Dismiss of Sheriff Glendell Hill and the PWCADC (Dkt. 19)

PWC Sheriff Glendell Hill and the PWCADC have moved to dismiss plaintiff's allegations set out in Claims One and Two for failure to state a claim.[8] In his first claim, plaintiff alleges that officers at the PWCADC tampered with his "legal instruments [and] evidence" during his incarceration there in January, 2013. It is well established that prison officials may view a prisoner's legal materials only in the presence of the prisoner. See Wolff v. McDonnell,

---

[8]The defendants plaintiff actually names in connection with those claims are the PWC Sheriff's Department, John Does 1 through 3, and Jane Doe 1. For reasons which are not entirely clear, defendants have assumed that plaintiff intended his allegations to implicate Sheriff Hill. Dkt. 20 at 2, n. 2. However this point need not be clarified, because regardless of the intended defendant, plaintiff's allegations in substance state no claim for which relief is presently available.

418 U.S. 539 (1974). However, this prohibition applies only to documents which are clearly marked as confidential communication from a prisoner's attorney. Id. at 575. Furthermore, a merely negligent act of viewing an inmate's legal mail, rather than a pattern or practice of doing so, does not rise to the level of a constitutional violation. Bryant v. Winston, 750 F. Supp. 733 (E.D. Va. 1990) (citing Averhart v. Shuler, 652 F. Supp. 1504 (N.D. Ind.), aff'd, 834 F.2d 173 (7th Cir. 1987), cert. denied, 484 U.S. 1073 (1988)). Here, plaintiff does not allege that his misplaced legal materials were clearly marked as confidential communications from his attorney, nor does he allege any facts suggesting that their possible exposure to prison officials outside his presence was due to anything more than negligence. Accordingly, at present, plaintiff fails to state claim of constitutional dimension with respect to the actions of the PWCADC employees he identifies as "John Doe 1 - 3" and "Jane Doe 1."

In his second claim, plaintiff contends that his "religious rights and freedoms" were abridged and he suffered "health issues" when he was denied an appropriate meat-free diet during that same twelve-day period of incarceration at the PWCADC. Plaintiff does not specify the provision under which he brings this claim. If he intends to allege that his non-vegetarian diet violated his First Amendment rights, a plaintiff to state a free exercise claim must allege facts sufficient to show (1) that he holds a sincere belief that is religious in nature and (2) that prison regulations impose a substantial burden on his right to free exercise of religion. Hernandez v. Comm'r., 490 U.S. 680, 699 (1989). The Supreme Court has defined "substantial burden" in a variety of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981), and forcing an individual to "choose between following the precepts of [his]

religion and forfeiting benefit, on the one hand, and abandoning one of the precepts of [his] religion ... on the other," Sherbert v. Verner, 374 U.S. 398, 404 (1963). Here, since plaintiff makes no claim that he was forced to modify his behavior or violate his beliefs as the result of the diet he was served at PWCADC, he states no claim for violation of his First Amendment rights.

Similarly, if plaintiff intended to invoke the Eighth Amendment in his second claim, a litigant wishing to establish a claim for cruel and unusual punishment due to conditions of confinement must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). In the specific context of a claim that an inmate's Eighth Amendment rights have been violated by food he was served, it is well settled that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted); see Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir.), cert. denied, 439 U.S. 837 (1978). Although the Eighth Amendment requires prisons to provide inmates with wholesome and nutritious meals, an inmate must allege a serious injury arising from the

20

provision of inadequate food to state an Eighth Amendment violation. Wilson, 501 U.S. at 298; White v. Gregory, 1 F.3d 267, 268 (4th Cir. 1993), cert. denied, 510 U.S. 1096 (1994) (concluding that plaintiff failed to state a claim because he failed to allege "serious or significant physical or mental injury" from being served only two meals a day on holidays and weekends). Here, plaintiff's allegations do not satisfy these requirements, so plaintiff's Claim Two must be dismissed without prejudice.

### IV.  Plaintiff's Motions

Also pending before the Court are a number of motions filed by plaintiff, to which no responses have been filed. For the following reasons, they will be adjudicated as follows:

a. Motion for Intervention (Dkt. 39)

In his Motion for Intervention,  plaintiff apparently seeks to add four parties to this action as interveners. ("So far there are four individuals and possibly more who want to take action and be part of this suit.")  Plaintiff does not name these individuals for fear of retaliation against them by the Commonwealth and PWC, and he states only generally that they would "compliment and add verification to [his] claims."  The doctrine of third party standing allows a plaintiff to bring an action on behalf of a third party, alleging an injury sustained by the third party, under certain circumstances where the third party cannot protect his or her own interests.  A Helping Hand, LLC v. Baltimore Cty., 515 F.3d 356, 363 n. 3 (4th Cir. 2008).  To maintain third-party standing, a plaintiff must establish three requirements: 1) an injury in fact; 2) a close relationship between the plaintiff and the person whose right is being asserted, and 3) an impediment to the third party's ability to protect his or her own interests.  Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 215 (4th Cir. 2002), citing Powers v. Ohio, 499 U.S. 400, 410-11 (1991).  Plaintiff has

established none of these requirements here as to any of the purported unnamed interveners, nor is there any indication that he could do so successfully. Therefore, the Motion for Intervention will be denied.

b. Motions for Reconsideration (Dkt. 40, 52)

By Order dated April 25, 2013, plaintiff's motion for an order of protection and restraint against the Commonwealth and its officials was denied on the holding that "[p]laintiff has not offered sufficient reason for the Court to impose the unprecedented restraining order on all officials of the Commonwealth of Virginia and has not offered any evidence of threats made by said officials against Plaintiff or his family. Without a good cause showing by Plaintiff, the Court cannot grant such a broad restraining order." In his motion filed May 16, 2013, plaintiff asserts that he needs the order of protection to ensure his safety and because "many incidents have occurred out the ordinary ... such as out of the blue traffic stops rights after court." Dkt. 40 at 2. In the motion filed July 10, 2013, plaintiff alleges that "[t]he Commonwealth and PWC Defendants have activated their final plot to keep from sending [his] oldest daughter ... home from being held hostage in what they call foster care." Dkt. 52 at 2. As before, these unsubstantiated allegations are insufficient to warrant the sweeping order of restraint plaintiff seeks, so both Motions for Reconsideration of the Order of April 25 will be denied.

c. Motion for Status Conference (Dkt. 41)

Plaintiff has requested that a status conference be held to so that "the issue of status and nationality [can be] brought to the floor" to establish that plaintiff is "a Moorish American Moslem and not black ...." As there is no legal need to make such a determination, plaintiff's motion will be denied.

22

d. <u>Motion to Amend Complaint and Add Defendants</u> (Dkt. 49)

Plaintiff alleges in a long and convoluted recitation essentially that he and his wife were forced to relocate to "Corporate Richmond Virginia" due both to the irregularities in the child custody proceedings in PWC and to problems with receiving their longstanding public housing assistance. To the extent that plaintiff's allegations are comprehensible, it appears that his housing assistance voucher was terminated, allegedly as part of the widespread conspiracy to deprive him of his rights, <u>id.</u> at 9-10, with the result that he and his wife were served with an eviction notice at the Richmond townhome in which they were living. <u>Id.</u> at 12. Without articulating the precise nature of the claim or claims he wishes to pursue against these individuals and entities, plaintiff seeks to amend the complaint to add the following defendants to this action: the Richmond Redevelopment and Housing Authority ("RRHA"); Willette C. Williams, a "housing worker" for RRHA; Tammy L. Grubb, an "RRHA worker;" "property manager" Joy Warfield; Jefferson Townhomes; and Gabrielle Jordan-Cooley and Vanessa Dieterly, whose positions are unclear. <u>Id.</u> at 19.

Motions to amend are committed to the discretion of the trial court. <u>Keller v. Prince Georges County</u>, 923 F.2d 30, 33 (4th Cir. 1991). In general leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15 (a), and a <u>pro se</u> litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim." <u>Dluhos v. Floating & Abandoned Vessel Known as "New York,"</u> 162 F.3d 63, 69-70 (2nd Cir. 1998). On the other hand, a motion to amend warrants denial where there is "an apparent or declared reason [for doing so] - such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party ... [or] futility of [the] amendment." Id. at 69 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  Here, the futility of plaintiff attempting to amend this federal action to sue the parties involved in his Virginia eviction proceedings is readily apparent, so the motion to amend will be denied.

### e. Motions for Federal Intervention in State Child Custody Proceedings

Plaintiff has filed several motions which collectively seek to have this Court intervene in various ways in his ongoing child custody dispute, as follow: Motion/Notice of Interruption and Obstruction of Justice by Commonwealth (Dkt. 45), in which plaintiff "request[s] all remedies to stop retaliatory actions from the Commonwealth and PWC agencies;"   Motion to Merge Child Support Matters with Federal Question and Subject Matter Jurisdiction (Dkt. 46), in which plaintiff requests that this Court "preclude the Commonwealth and PWC from taking any state actions against" him and "to order all child support obligations dismissed by [the] Commonwealth," id. at "Conclusions;" and a second  Motion/Notice of Interruption and Obstruction of Justice by Commonwealth (Dkt. 50), Motion for Quick Intervention and Remedy (Dkt. 51), and Motion to Expedite Remedy and Order Complaints (Dkt. 54),  in which plaintiff again makes allegations of conspiracy and retaliation in the ongoing child custody proceedings and "ask[s] for remedy from this honorable court regarding these facts," id. at 15. The Court is without jurisdiction at this time to grant plaintiff any of the relief he seeks in these motions.

In Younger v. Harris, 401 U.S. 37, 43 (1971), the Supreme Court held that  principles of comity and federalism preclude federal involvement in a pending state court criminal proceeding unless no adequate state remedies are available and the threatened irreparable injury is "both great and immediate." The Supreme Court subsequently extended the Younger abstention

24

doctrine to include state civil and administrative proceedings that implicate important state interests. See, e.g., Moore v. Sims, 442 U.S. 415 (1979) (applying Younger to pending state civil proceeding that implicated an important state interest); Huffman v. Pursue, Ltd., 420 U.S. 592 (1975) (applying Younger to pending state case that was similar to a criminal proceeding); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982) (applying Younger to pending state administrative proceeding that implicated an important state interest). In addition, a companion case to Younger extended the abstention doctrine to declaratory judgments that have the potential to interfere with pending state proceedings. See Samuels v. Mackell, 401 U.S. 66 (1971). Here, since plaintiff seeks this Court's intervention in a pending state custody proceeding, the abstention doctrine is appropriately applied. Moreover, none of the extraordinary circumstances which might indicate a great and immediate threat of irreparable injury are present here. Cf. Younger, 401 U.S. at 45 (three limited situations constituting such extraordinary circumstances are 1) a statute that is "flagrantly and patently violative of express constitutional provisions," 2) state prosecutions brought in bad faith without "any expectation of securing valid convictions," and 3) when it "plainly appears" that pursuing claims in the pending state proceeding "would not afford adequate protection."). Therefore, this Court will adhere to the abstention doctrine, and the motions requesting intervention in the state child custody proceedings will be denied.

f. Motion for Immediate Release / Writ of Habeas Corpus (Dkt. 57)

Plaintiff alleges that he was picked up by a bail bondsman on July 21, 2013. At a court appearance the following day, plaintiff informed the Court "about the Federal Question Jurisdiction" allegedly conferred by this and other federal filings, but the judge replied that

"federal question Jurisdiction don't have nothing to do with the case," and the hearing proceeded. According to plaintiff, "this just proves the Commonwealth and PWC retaliatory intentions," and he seeks an order directing his immediate release from the PWCADC. However, the <u>Younger</u> doctrine discussed above precludes this Court's involvement in what apparently are plaintiff's ongoing state criminal proceedings. Therefore, his Motion for Immediate Release must be denied, without prejudice to his ability to file a separate action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 following complete exhaustion of state court remedies in the event he is convicted of the charges he faces.

g. <u>Motions for Remedy and Relief and ... to Submit New Evidence</u> (Dkt. 58-59)

In his Motion for Remedy and Relief, plaintiff seeks an order directing the PWC Circuit Court and the Commonwealth to "hand over transcripts as evidence," which plaintiff apparently intends to use "to update the evidence in this [federal] case." Similarly, in his Motion to Submit New Evidence, plaintiff seeks to obtain and file in this federal proceeding the transcripts from the CST hearing on April, 2012, which allegedly would show "biased remarks" by the judge and lawyers, demonstrate that plaintiff is not delusional, and assist plaintiff in explaining the nature of his Moorish beliefs. Because the transcripts of plaintiff's state actions have no relevance to any issues currently before this Court, the motion will be denied.

h. <u>Motion for Hearing</u> (Dkt. 61)

Plaintiff states that he remains confined in the PWCADC, and he requests the Court to make arrangements for him to attend "any and all hearings and related matters regarding this case." As no hearings have been scheduled in this matter, plaintiff's motion will be denied as moot.

i. Motion of Hearing (Dkt. 63)

Plaintiff states that the "CST hearing" took place on October 21, 2013, and he contends

that it was "very bias" [sic] and procedurally improper due to his status as a Moorish American

Moslem.  He alleges essentially that he received ineffective assistance of counsel at that

proceeding, and also appears to feel that his right to self-representation was abridged. No claim

for relief can be discerned in the body of the motion, but to the extent that the caption may be

read to seek some sort of a hearing in federal court regarding the issues plaintiff raises, the

motion will be denied for the reasons discussed above.  Younger, supra.

j. Motion to Proceed (Dkt. 64)

Plaintiff apparently seeks the issuance of orders to move this federal case forward.

Because the instant order accomplishes that, plaintiff's request will be denied as moot.

### V.  Conclusion

For the foregoing reasons, the Motions to Dismiss of all defendants will be granted for

the reasons discussed above, and the action will be dismissed without prejudice. Plaintiff's

pending motions will be denied. An appropriate Order shall issue.

Entered this ___20th___ day of ___March___ 2014.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

27